ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAY 2 8 2013

JAMES N, HATTEN, Clerk
By: /s/ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIMINAL INDICTMENT |
| v. | : |
| | : NO. 1:13CR0221 |
| JEROME OBERLTON | : |
| MAHENDRA PATEL | : |

**THE GRAND JURY CHARGES THAT:**

**COUNT ONE**
**Conspiracy**
**(18 U.S.C. § 371)**

1.  Beginning in or about 2006 and continuing at least until in or about April 2008, the exact dates being unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendants, JEROME OBERLTON (OBERLTON) and MAHENDRA PATEL (PATEL), and others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, agree and have a tacit understanding with each other to commit certain offenses against the United States, that is,

   (a)   to corruptly solicit and demand for the benefit of a person, and accept and agree to accept a thing of value from a person, intending to be influenced and rewarded in connection with such business, a transaction, or series of transactions relating to a local school district,

1

that is, the Atlanta Public School System (APS), such local school district being an organization, government or agency as those terms are defined at Section 666(d), involving something of value of $5,000 or more and such local school district having received federal assistance in excess of $10,000 in a one-year period, in violation of Title 18, United States Code, Section 666(a)(1)(B);

(b) to corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of a local school district, such local school district being an organization, government or agency as those terms are defined at Section 666(d), which local school district received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such local school district involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(2);

(c) to defraud APS, both for obtaining money and property from APS as well as to deprive APS of the good, faithful, and honest services of defendant, OBERLTON, in his capacity as an APS employee, by means of materially false and fraudulent pretenses, representations and promises and in furtherance thereof did knowingly send and cause

    to be sent and delivered by the United States Postal Service or private or commercial interstate carrier a matter and thing, in violation of Title 18, United States Code, Sections 1341 and 1346.

(d) to defraud APS, both for obtaining money and property from APS as well as to deprive APS of the good, faithful, and honest services of defendant, OBERLTON, in his capacity as an APS employee, by means of materially false and fraudulent pretenses, representations and promises and in furtherance thereof, did knowingly transmit and cause to be transmitted, in interstate commerce, by means of wire communications, certain writings, signs, signals and sounds for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

## BACKGROUND

At all times relevant to this Indictment, unless otherwise stated:

### Atlanta Public Schools

2. APS was a public school district in the City of Atlanta, located in the Northern District of Georgia, with students enrolled in approximately 100 different schools. Among the powers of APS was the ability to purchase technology-related equipment and services from vendors for the benefit of its member schools. APS

received at least $10,000 in assistance from the United States government each year relevant to the indictment.

## APS' Data Warehouse Program

3. OBERLTON was APS' Chief Information Officer from approximately 2004 through August 2007, and had overall management responsibility for APS' information technology program. OBERLTON supervised a staff of employees and contractors. In January 2007, OBERLTON issued or caused to be issued a request for proposal (RFP) for a Data Warehousing (DW) project at APS. Through the DW project, information relating to APS' operations, including student information, was to be maintained digitally in a secure, central location. At the start of the DW project in January 2007, OBERLTON influenced the request for proposal (RFP) process and, ultimately, caused the vendor who provided DW services to APS to be selected in exchange for kickbacks paid by the vendor to OBERLTON and PATEL.

4. As an APS employee, OBERLTON was aware of, and acknowledged, APS' Conflict of Interest policy. This policy required, among other things, that each employee had a duty to act in the best interest of the students and school system; that no employee would use his or her influence or authority as an APS official to sell or effect a sale, directly or indirectly, for personal gain, to the Board or to any APS employee; and that no employee would accept outside employment

or business activity with obligations which might conflict, or appear to conflict, with the interests of APS.

## OBJECTS OF THE CONSPIRACY

5. It was an object of the conspiracy for OBERLTON and PATEL, to enrich themselves by corruptly accepting things of value with the intent of being influenced and rewarded for supporting the interests of unindicted co-conspirators A and B and their company, Company A, in connection with APS' DW project and other APS work.

6. It was a further object of the conspiracy for unindicted co-conspirators A and B and Company A to corruptly give things of value to OBLERTON and PATEL with the intent of influencing and rewarding OBLERTON and PATEL for supporting the interests of co-conspirators A and B and Company A, in connection with APS' DW project and other APS work performed by Company A.

## MANNER AND MEANS OF THE CONSPIRACY

7. It was part of the conspiracy that co-conspirators A and B and Company A, would and did corruptly give checks totaling approximately $60,000 to OBERLTON and PATEL. These payments were intended by co-conspirators A and B as kickbacks to OBERLTON and PATEL in exchange for the award of the DW project.

8.  It was further part of the conspiracy that OBERLTON and PATEL would and did corruptly accept checks totaling approximately $60,000 from co-conspirators A and B and Company A. OBERLTON and PATEL understood that these payments were kickbacks intended to influence the award of the DW project.

9.  It was further part of the conspiracy that OBERLTON and PATEL did corruptly provide influence, assistance and favorable treatment to co-conspirators A and B and Company A, in conjunction with awarding the APS DW project and other APS work to Company A, in exchange for the bribes paid by co-conspirators A and B and Company A.

10. It was further part of the conspiracy that OBERLTON concealed from APS his ownership of Global Technology Partners (GTP) and Global Technology Services (GTS), corporations to which the bribes were paid, as well as OBERLTON and PATEL's acceptance of payments from co-conspirators A and B whose company, Company A, conducted business with APS and was awarded over $700,000 in APS project work. GTP and GTP were wholly owned and controlled by OBERLTON.

11. It was further part of the conspiracy that OBERLTON, PATEL, co-conspirators A and B and Company A, used the mails, private carriers and wires in interstate commerce to transfer funds and to communicate, including via the

telephone and the Internet, and caused funds to be transmitted, by means of mail, private carrier and wire in interstate commerce.

12. It was further part of the conspiracy that payments relating to this conspiracy from Company A to OBERLTON continued through April 2008.

## OVERT ACTS

13. In furtherance of the conspiracy, and in order to effect the purposes and objects thereof, the defendants, OBERLTON and PATEL, co-conspirators A and B and Company A, and others known and unknown to the Grand Jury, committed various overt acts and caused various overt acts to be committed in the Northern District of Georgia and elsewhere, including, but not limited to, the following:

   a. On or about April 17, 2006, the defendants, OBERLTON and PATEL, traveled to Detroit, Michigan to meet with conspirators A and B.

   b. On or about January 20, 2007, APS issued an RFP for DW services. Company A responded to the RFP, seeking the award of the DW project with APS.

   c. Prior to the award of the DW project, PATEL contacted co-conspirators A and B and Company A to inform them that they would need to pay kickbacks to OBERLTON and PATEL in order to get the APS DW project.

d. On or about January 28, 2007, Company A signed a sham consulting agreement with OBERLTON's company, GTP, agreeing to pay GTP $380,000 in exchange for DW services.

e. On or about January 30, 2007, OBERLTON sent a letter on APS letterhead to co-conspirators A and B at Company A, notifying them that Company A had been awarded the DW project. Soon thereafter, Company A began work on the APS DW project.

f. On or about February 14, 2007, PATEL and Company A entered into a sales representative agreement whereby Company A agreed to pay a 3.9 percent commission to PATEL based on revenue generated from the DW project.

g. On or about April 26, 2007, OBERLTON's company, GTS, and Company A entered into a sham partnership agreement whereby the parties agreed to give OBERLTON 30% of the profits from the DW scheme.

h. On or about July 20, 2007, OBERLTON resigned his position as APS' Chief Information Officer. His last day at APS was on or about August 22, 2007.

i. On or about August 24, 2007, OBERLTON caused GTS to send a $24,000 invoice for consulting services to Company A for the DW project, which was subsequently paid by Company A.

j. On or about September 16, 2007, Company A completed the DW project at APS.

k. On or about September 28, 2007, OBERLTON sent a second invoice to Company A for $55,000 relating to the DW project. Company A subsequently paid $9,000 to GTS on or about November 1, 2007.

l. On or about November 2, 2007, OBERLTON wrote a letter to Company A complaining he had not been properly compensated.

m. On or about January 25, 2008, Company A paid GTS $21,660.24 for the DW project.

n. On or about March 14, 2008, Company A paid the final sale commission to PATEL for the DW project.

o. On or about April 7, 2008, Company A sent by Federal Express the final $21,660.24 payment to OBERLTON's company, GTS. This payment was intended as the final kickback payment on the DW project.

p. On or about April 10, 2008, OBERLTON sent an email to co-conspirators A and B at Company A telling them that the final payment had been received.

q. On or about April 16, 2008, the $21,660.24 check was deposited and posted to Company A's account after OBERLTON deposited the check into the GTS bank account.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Conspiracy Under Color of Official Right
### (18 U.S.C. § 1951)

14. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 13, as if fully set forth herein.

15. In or about 2006, in the Northern District of Georgia and elsewhere, the defendants, JEROME OBERLTON and MAHENDRA PATEL, did knowingly and willfully conspire, combine, confederate, agree, and have a tacit understanding with one another, to knowingly and unlawfully affect, in any way and degree, commerce and the movement of any article and commodity in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951(b); that is, the defendants, JEROME OBERLTON and MAHENDRA PATEL, unlawfully obtained property from another, in the form of United States currency not otherwise due to them, with that person's consent, in exchange for their assistance in securing work with APS, said consent having been induced under color of official right, in violation of Title 18, United States Code, Section 1951(a).

## COUNT THREE
## Money Laundering Conspiracy
## (18 U.S.C. § 1956(h))

16. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 13, as if fully set forth herein.

17. Beginning in or about October 2006, the exact date being unknown to the Grand Jury, and continuing until on or about April, 2008, in the Northern District of Georgia, and elsewhere, the defendants, JEROME OBERLTON and MAHENDRA PATEL, did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with each other and others known and unknown to the grand jury to violate Title 18, United States Code, Sections 1956(a)(1)(B), that is, knowing that the property involved in the financial transaction represents the proceeds of some form of unlawful activity, that is, violations of Title 18, United States Code, Sections 1341 and 1343, JEROME OBERLTON and MAHENDRA PATEL conducted and attempted to conduct such financial transaction which, in fact, involved the proceeds of such specified unlawful activity, knowing that such transaction was designed, in whole and in part, to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said unlawful activity, all in violation of Title 18, United States Code, Sections 1956(h) and 2.

## COUNT FOUR
## (Mail Fraud)
## (18 U.S.C. § 1341)

18. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 13, as if fully set forth herein.

19. On or about the date identified in column B below, in the Northern District of Georgia and elsewhere, the defendants, JEROME OBERLTON and MAHENDRA PATEL, aided and abetted by each other, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money by means of materially false pretenses, representations and promises did deliver and knowingly cause to be delivered by private or commercial interstate carrier, according to the direction thereon, the matter identified in column D below:

| A | B | C | D |
|---|---|---|---|
| COUNT | DATE | RECIPIENT ADDRESS | DESCRIPTION OF MATTER |
| FOUR | 4/7/2008 | 125 Town Park Drive NW, Suite 300, Kennesaw, GA | A check for $21,660.24, made payable to Global Technology Services, Inc. |

All in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

## COUNT FIVE
## (Wire Fraud)
## (18 U.S.C. § 1343)

20. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 13, as if fully set forth herein.

21. On or about the date set forth below in Column B, in the Northern District of Georgia and elsewhere, the Defendant, JEROME OBERLTON, for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud and to obtain money and property from APS, by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause the transmission in interstate commerce, by means of a wire communication, certain writings, signs, signals, and sounds, that is, the Defendant, JEROME OBERLTON, did knowingly cause the transmission identified below in Column D to occur below:

| A | B | C | D |
|---|---|---|---|
| COUNT | DATE | RECIPIENT | DESCRIPTION OF MATTER |
| FIVE | 4/10/2008 | Company A | Email communication to Company A acknowledging receipt of payment |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNT SIX
## Bribery
## (18 U.S.C. § 666)

22. The Grand Jury re-alleges and incorporates by reference Paragraphs 2 through 13, as if fully set forth herein.

23. On or about April 16, 2008, within the Northern District of Georgia and elsewhere, the defendant, JEROME OBERLTON, being an agent of a local school district, which local school district received federal assistance in excess of $10,000 during 2007 and 2008, did corruptly solicit, demand, accept, and agree to accept for his own benefit, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such local school district involving anything of value of $5,000 or more, that is, the defendant, JEROME OBERLTON, being an employee of APS, corruptly solicited, demanded, accepted, and agreed to accept a check in the amount of $21,660.24, intending to be influenced and rewarded in connection with APS' DW project, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT SEVEN
## Money Laundering
## (18 U.S.C. § 1957)

24. On or about April 16, 2008, in the Northern District of Georgia, and elsewhere, Defendant, JEROME OBERLTON, knowingly engaged in and attempted to engage in a monetary transaction in criminally derived property of a

value greater than $10,000, consisting of the withdrawal, transfer and exchange, in and affecting interstate commerce, of funds and monetary instruments by, through and to a financial institution, such property having been derived from specified unlawful activity, that is, the mail and wire fraud schemes detailed in Counts One through Six above (including all subparagraphs) and incorporated herein as though fully set forth, all in violation of Title 18, United States Code, Sections 1957 and 2.

A \_\_\_true\_\_\_ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

KURT R. ERSKINE
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 249953

JILL STEINBERG
ASSISTANT UNITED STATES ATTORNEY
Georgia Bar No. 502042

U.S. ATTORNEY'S OFFICE
600 U.S. Courthouse
75 Spring Street, SW
Atlanta, GA 30303